UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERICK LADAL SIMS,<br><br>                     Plaintiff,<br><br>        v.<br><br>VICTOR JOHNSTON, et al.,<br><br>                     Defendants. | Case No. C17-0758-RSM-MAT<br><br>REPORT AND RECOMMENDATION |

Plaintiff Erick Sims is currently confined at the King County Jail. Proceeding *pro se* and *in forma pauperis*, he filed a 42 U.S.C. § 1983 civil rights complaint against Corrections Officer Johnston and Sergeant Jellen. (Dkt. 5.) The Court screened plaintiff's complaint, found it deficient, and granted plaintiff leave to file an amended complaint by July 7, 2017. (Dkt. 6.) On July 10, 2017, plaintiff filed a Motion to Amend Civil Rights Claim (Dkt. 7) and a Motion to Appoint Counsel (Dkt. 8). Because the Motion to Amend does not cure the deficiencies identified in the Court's screening order, the Court recommends that plaintiff's complaint and this action be DISMISSED with prejudice for failure to state a claim and that this this dismissal count as a STRIKE for purposes of 28 U.S.C. § 1915(g). The Court further recommends that plaintiff's Motion to Amend be DENIED, and the Motion to Appoint Counsel be DENIED as moot.

REPORT AND RECOMMENDATION - 1

I.     BACKGROUND

A.     Factual Allegations

Plaintiff makes the following allegations in his complaint. On or about April 19, 2016, he was a pretrial detainee housed in the administrative segregation unit. (Dkt. 5 at 3.) The toilet in his cell overflowed, and Officer Johnston responded. (*Id.*) Officer Johnston called plaintiff "you stupid fucking piece of shit" repeatedly. (*Id.*) Plaintiff felt that this was racist. (*Id.*) Officer Johnston returned to the station deck and used the intercom system to continue to repeat the phrase. (*Id.* at 5.) After the toilet overflow was cleaned up, Officer Johnston instructed that the mop and squeegee be left near the door to the unit. (*Id.*) The officer then continued the verbal harassment and told plaintiff over the intercom to "watch [his] back boy." (*Id.* at 6.)

Then the inmate in the cell next to plaintiff's cell was let out to use the mop and squeegee to clean his cell. (*Id.*) The inmate began to "slam" the squeegee under plaintiff's cell door. (*Id.*) The squeegee scraped over plaintiff's bare feet and broke off one of his toe nails. (*Id.*) Although plaintiff feared for his "life and safety," he refused to respond to the inmate's demands that he back away from his cell door. (*Id.*) The inmate eventually returned to his cell, and Officer Johnston resumed calling plaintiff "you stupid fucking piece of shit" over the intercom. (*Id.* at 7.)

Plaintiff flooded his floor with the toilet, and Officer Johnston and another officer came into the unit and turned off the water to plaintiff's cell. (*Id.*) Officer Johnston also passed out mail, and he put a letter for plaintiff in a wet spot about 12 inches outside of plaintiff's cell door. (*Id.* at 8.) Plaintiff had to lie on the ground to reach under the door and get the letter. (*Id.*)

About ten minutes later, Sergeant Jellen and two officers came to plaintiff's door. (*Id.*) Sergeant Jellen handcuffed plaintiff and took him to the T.V. area in the unit. (*Id.*) Plaintiff explained what happened, said that he feared for his safety and wellbeing under Officer Johnston's

REPORT AND RECOMMENDATION - 2

1 supervision, and asked to be moved to another unit. (*Id.* at 9.) Sergeant Jellen said that plaintiff could not be transferred. (*Id.*) Plaintiff then said he felt suicidal, and he was transferred to the suicide watch unit. (*Id.*) Two days later, he was transferred back to his original unit. (*Id.*) He was infracted and found guilty. (*Id.*)

B.    Motion to Amend

As noted above, the Court screened plaintiff's complaint and concluded that he failed to state a claim upon which relief may be granted. (Dkt. 6.) The Court granted plaintiff leave to file an amended complaint, but instead, plaintiff filed a Motion to Amend. (Dkt. 7.) Plaintiff claims that Officer Johnston violated the Equal Protection Clause by racially discriminating against him. (Dkt. 7 at 2.) Specifically, he claims that Officer Johnston's use of the phrase "piece of shit" replaced the word "nigger," so that Officer Johnston was in fact calling him a "stupid fucking nigger." (*Id.*) Plaintiff claims that Officer Johnston demonstrated his "intent to enforce the racial discrimination, and to inflict emotional pain and suffering" by continuing to repeat the phrase. (*Id.*) Plaintiff also claims that Officer Johnston treated him differently from "all other inmates, with no rational[ly] related legitimate purpose." (*Id.* at 5.)

Plaintiff claims that Officer Johnston violated the jail's policy and procedures by failing to document or report all of the events that occurred. (*Id.* at 3, 6.) Plaintiff claims that Officer Johnston committed the criminal act of a hate crime and abused his authority. (*Id.* at 4.) According to plaintiff, Officer Johnston "deliberately gave a dangerous inmate a weapon" that he was not allowed to possess, thereby violating jail policy. (*Id.*) Plaintiff further claims that Officer Johnston's warning to "watch his back boy" was a knowing disregard of plaintiff's safety and a risk of serious harm. (*Id.*)

With respect to Sergeant Jellen, plaintiff claims that the Sergeant ignored his report of fear

REPORT AND RECOMMENDATION - 3

and ignored the policy that dictated plaintiff should have been removed from his unit until an investigation was completed. (*Id.* at 7.)

## II.  DISCUSSION

### A.  Screening Standard

Once a complaint is filed *in forma pauperis*, the Court must dismiss it prior to service if it "fails to state a claim on which relief can be granted." 28 U.S.C. § 1915(e)(2)(b)(ii); *see Talley v. Jackson*, 2015 WL 3796339, at *1 (W.D. Wash. June 18, 2015) (citations omitted). To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The factual allegations must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint may be dismissed if it lacks a cognizable legal theory or states insufficient facts to support a cognizable legal theory. *Zixiang v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

The Court holds *pro se* plaintiffs to less stringent pleading standards than represented plaintiffs and liberally construes a *pro se* complaint in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Nevertheless, § 1915(e) "not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1229 (9th Cir. 2000) (en banc). When dismissing a complaint under § 1915(e), the Court gives *pro se* plaintiffs leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

### B.  Section 1983 Standard

To sustain a § 1983 civil rights claim, plaintiff must show (1) he suffered a violation of

rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

C.     Plaintiff Fails to State a Claim Against Officer Johnston

In declining the serve plaintiff's complaint, the Court explained why he failed to state a viable claim against Officer Johnston. (Dkt. 6 at 4-5.) First, the Court explained that allegations of verbal harassment or abuse do not state a constitutional deprivation under § 1983. *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (prison officials' abusive language towards Muslim inmates insufficient to establish equal protection violation); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (disrespectful and assaultive comments by prison guard not enough to implicate Eighth Amendment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not sufficient to state a § 1983 claim); *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (threats do not violate Eighth Amendment); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (verbal threats and name calling are not actionable under § 1983); *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (prisoner does not have cause of action under § 1983 for being called obscene name by prison employee); *McCollum v. California*, 610 F. Supp. 2d 1053, 1060 (N.D. Cal. 2009) (derogatory comments do not violate equal protection).

Second, the Court concluded that Officer Johnston's release of the inmate who harmed plaintiff with the squeegee did not rise to the level of a constitutional violation. Jail officials are

REPORT AND RECOMMENDATION - 5

required to take reasonable measures to guarantee the safety of inmates, and officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (convicted prisoners); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (pretrial detainees). To establish a violation, an inmate must allege facts supporting that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to the inmate's safety. *Farmer*, 511 U.S. at 834; *Frost*, 152 F.3d at 1128; *Redman v. Cnty. of L.A.*, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc). To demonstrate deliberate indifference, a prisoner must allege facts that an official knew of and disregarded an excessive risk to inmate safety; that is, the official must have been aware of facts from which the inferences could be drawn that a substantial risk of serious harm existed and that the official drew the inference. *Farmer*, 511 U.S. at 837; *Frost*, 152 F.3d at 1128; *Redman*, 942 F.2d at 1442. The Court explained that because plaintiff was locked in his cell and the inmate could only reach under the door, the allegations do not establish a substantial risk of harm.

Finally, the Court explained that plaintiff failed to state a violation of the U.S. Constitution by alleging that Officer Johnston placed his letter on the wet ground outside of his cell, which forced him to lie on the ground to reach the letter.

The additional allegations in plaintiff's Motion to Amend do not cure any of the identified deficiencies or state a new and different claim. Even assuming Officer Johnston's alleged verbal harassment was based on plaintiff's race, plaintiff fails to allege a violation of the Equal Protection Clause. As noted above, verbal harassment is insufficient to state a constitutional violation, including a violation of the Equal Protection Clause. *See Freeman*, 125 F.3d at 738 (prison officials' abusive language towards Muslim inmates insufficient to establish equal protection violation); *McCollum*, 610 F. Supp. 2d at 1060 (derogatory comments do not violate equal

protection).

Plaintiff's claim that Officer Johnston violated prison policies and procedures by failing to fully report on the incidents does not state a violation of federal statutory or constitutional law. Plaintiff has no constitutional entitlement to specific policies and procedures regarding reporting, and so when these procedures are violated, they do not cause any constitutional injury. *Cf. Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoners do not have constitutional entitlement to a specific prison grievance procedure, and so there is no constitutional violation when grievance procedures are not observed). Additionally, even if Officer Johnston violated prison policy by allowing the inmate access to the squeegee, the officer was not deliberately indifferent to a serious risk of harm because, as noted previously, plaintiff remained locked in his cell where there was no serious risk. Plaintiff's claims against Officer Johnston should be dismissed with prejudice.

D.   Plaintiff Fails to State a Claim Against Sergeant Jellen

In declining the serve plaintiff's complaint, the Court explained why he failed to state a viable claim against Sergeant Jellen based on the Sergeant's failure to transfer him to a different unit. (Dkt. 6 at 5.) Specifically, the Court informed plaintiff that he has no right to be housed in any particular cellblock or to object to his transfer from one cellblock to another. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983) (transfer from general population to administrative segregation does not involve a protected interest); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions); *Lucero v. Russell*, 741 F.2d 1129 (9th Cir. 1984) (transfer to maximum security does not infringe on any protected liberty interest); *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (transfer within a prison is within the discretion of prison officials). Accordingly, he failed to state a claim against Sergeant Jellen. Plaintiff's new allegations against Sergeant Jellen do not alter this

conclusion.  Therefore, his claims against Sergeant Jellen should be dismissed with prejudice.

### III. CONCLUSION

The Court recommends (1) DISMISSING plaintiff's complaint and this action with prejudice for failure to state a claim upon which relief may be granted, (2) counting this dismissal as a STRIKE for purposes of 28 U.S.C. § 1915(g), (3) DENYING plaintiff's motion for leave to amend (Dkt. 7), and (4) DENYING as moot plaintiff's motion to appoint counsel (Dkt. 8).  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **August 18, 2017**.

Dated this 25th day of July, 2017.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8